LECHE, J.
Plaintiff and defendant were married about the year 1897, and one daughter, Anaise, was born of this union. They lived together in the city of New Orleans for about 12 years, when trouble arose in the family, and the wife with the little girl took passage on a steamship and left for Guatemala. Nothing has ever been heard of them since their departure. The wife has no known relatives in New Orlean's, and the curator ad hoc appointed to represent her in this litigation has been unable after diligent inquiry to ascertain whether the wife and child are still living, and, if living, where they may be located.
The husband, who is plaintiff, after alleging the above facts, further shows that the community between himself and his absent wife owns nonproductive vacant property situated in the city of New Orleans, which is appraised at $11,200, that there is due by said property a local assessment for paving amounting to $1,690; that he is a day-laborer earning about $50 per month, and unable to pay this charge upon the property. He then prays that the court appoint a curator ad hoc to his .absent wife and child; that the community be dissolved; that the property be sold to effect a partition; and that the wife’s share be deposited in the registry of the court, with leave given to him, the husband, to be placed in provisional possession thereof upon giving security as-provided by law.
This demand was put at issue by the curator ad hoc, who has appealed from an adverse judgment.
Of course, if it were known that the wife is still living, there would be no necessity for this proceeding, but plaintiff claims that if he should offer the property for sale no. prudent purchaser would be willing to accept a title in the absence of such knowledge. If th.e wife should be dead and her child should be living, it is then claimed that a title from the husband would be worthless as to the child’s portion of the property. So that the husband is confronted with a situation where he is unable to pay the-governmental charges on the property and unable to alienate the property in order to' obtain the funds necessary to pay these charges. It is hardly conceivable that our law is powerless to rescue the plaintiff from a situation where he must permit the prop1erty to be sold at public auction and probably sacrificed at a loss to himself and to the absentee. The Code Napoléon contains^ provisions whereby the plaintiff may obtain adequate relief, and the articles of our Code, almost literally copied from the Code Napoléon, are to the same effect.
[1] According to articles 57 and 58 of our Code, the presumptive heirs may cause themselves to be placed in provisional possession' of the property of the absentee after 5 years, or after 7 years when the absentee has left a power of attorney, from the time of his* departure or from the time he was heard of last.
In this case the absentee departed about the month of December, ,1907, she wrote one-letter about that time, and nothing has since- *291 been beard about ber or the child. The above-cited articles of the Code then become applicable, as the absentee left no power of attorney, and had departed and had not been heard of for some 13 years when this case was .tried.
Article 61 of our Code, corresponding to article 124 of the Code Napoléon, then provides specially for cases where the absentee is the husband or wife of the person present and residing in this state. That article is couched in the following language:
“The husband or wife of the absentee, who is not separated in estate from him or her, and who wishes to continue to enjoy the benefit of the .community or partnership of matrimonial gains, which existed between them, may prevent the provisional possession or exercise of all the rights which may depend upon the death of the absentee, and claim and preserve for himself or herself, in preference to any other person, the administration of the estate of his or her absent husband or wife.
“If on the contrary the husband or wife of the absentee chooses rather to have the community dissolved, he or she may exercise and claim all his or her rights, both legal and conventional, on his or her giving security for such things as may be liable to be restored.
“The wife who' elects to have the community continued, has, notwithstanding, the right of renouncing it afterwards.”
According to the provisions of this article it appears that plaintiff! in this case had the option either of continuing the community with the same rights and privileges as if the wife were present, including the right to administer the community property and to alienate it if he should deem it proper or of dissolving the community and having himself placed in provisional possession of the wife’s share, as presumptive heir of his wife and child.
This construction of article 64, O. 0., is in full accord with the almost unanimous opinion of the French commentators on the corresponding article of the Code Napoléon. Sirey in his Codes Annotés (3d Ed.) vol. 1, p. 87, note 9, says:
“The husband who, in the absence of his wife, has chosen to continue the community, preserves, after as before the absence, the right to alienate and mortgage the property of the community.”
He quotes in support of this doctrine Persil, Reg. hyp. on article 124 (C. N.) Nto. 7; Talandier, p. 134; Toullier, vol. 4, p. 360; Delvincourt, vol. 1, p. 94; Plasman, p. 279; Demolombe, No. 285; Aubry and Rau, vol. 1, par. 155, note 6; Laurent, No. 206. Contra, Proudhon, vol. 4, p. 173. See, also, Baudry, Precis de Droit Civil, vol. 1, No. 445. Dalloz, Codes Annotés, vol. 1, note 22, under article 124 (C. N.), says:
“Thus, the husband may sell, alienate and hypothecate the property without the concurrence of the heirs of the wife, as he could do, without her consent, when she was present.” Fuzier-Herman, Code Civile Annoté', art. 124 (C. N.); Carpentier and Du Saint, Repertoire General Alphabetique, under the heading of “Absentees.”
The French authorities, with the single exception of Proudhon, are unanimous in thus construing the meaning of the language contained in article 124, C. N., which is similar to our article 64, in regard to the option of the husband to continue the community when his wife is an absentee.
[2] In the present case, however, the husband does not ask to continue the community, but has availed himself of the other option, that of dissolving the community. No citation of authority is necessary to construe that part of article 64, as the language itself is clear, free of ambiguity, and not subject to any reasonable misconstruction. If he has the right to have the community dissolved, he has, by necessary implication, the right to have the property of that community partitioned.
It is suggested by the curator ad hoc that under the terms of G. O. art. 69, the plaintiff is prohibited from having the community property sold. That article recites:
*293 “Those persons who enjoy only in virtue of the provisional possession, can neither alienate nor mortgage the immovables of the absentee.”
But the property which plaintiff seeks authority to sell is not the property of the absentee. It is the property of the community which plaintiff is entitled to have partitioned, and in which the absentee only has an undivided interest, so that by its very terms the quoted article has no application here. Plaintiff does not ask for the sale of the absentee’s property as provisional possessor thereof, but as co-owner entitled to a partition under C. O. art. 1289. It would serve no useful purpose to further discuss the provisions of’ article 69. Suffice it to say that the relief for which plaintiff prays does not conflict with that article.
We are of the opinion that plaintiff is entitled to the relief for which he prays, and that the judgment appealed from is sanctioned by law, and for this reason that judgment is affirmed, all costs to be paid from the assets of the community to be partitioned.